# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| LORALIE NOLET, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>EGS FINANCIAL CARE INC. and SYNCHRONY BANK,<br><br>Defendants. | Case No.: 17-cv-1476<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

## INTRODUCTION

1.      This class action seeks redress for debt collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Loralie Nolet is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her debts allegedly incurred for personal, family, or household purposes.

5.      Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer credit transaction.

6. Defendant EGS Financial Care, Inc. ("EGS") is a debt collection agency with its principal place of business located at 400 Horsham Boulevard, Suite 130, Horsham Corp. Ctr., Horsham, Pennsylvania 19044, and with Wisconsin registered agent Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

7. EGS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. EGS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. EGS is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. Defendant Synchrony Bank (hereinafter "Synchrony") is a national bank with its primary place of business located at 170 West Election Road, Suite 125, Draper, Utah 84020.

11. Synchrony does substantial business in Wisconsin.

12. Synchrony issues and services "WalMart" and numerous other "branded" or "private label" credit cards around the world, including in Wisconsin.

13. On its face, the WCA's regulation of debt collectors applies without distinction to creditors collecting on their own behalf, to creditors who hire other debt collectors to collect on the creditor's behalf, and to third-party debt collectors acting on behalf of creditors. *See* Wis. Stat. § 427.103(3).

14. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

2

15.     Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

16.     Synchrony is a "debt collector" under Wisconsin law, in that it collects consumer debts owed to itself, both directly and indirectly through collection agencies.

17.     The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

18.     The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

19.     Synchrony uses third-party debt collection agencies, including the third-party debt collection agency named as a co-defendant in this case, to collect consumer debts. Synchrony, directly or indirectly, is a debt collector under this arrangement. Wis. Stat. § 427.103(3).

20.     Any company meeting the definition of a "debt collector" (here, Synchrony) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

3

# FACTS

21.     On or about October 25, 2016, Synchrony mailed an account statement to Plaintiff regarding an alleged debt, allegedly owed for Plaintiff's "WalMart MasterCard" account. A copy of this account statement is attached to this complaint as Exhibit A.

22.     Plaintiff obtained and used the WalMart MasterCard account only for personal, family or household purposes, namely, the purchase of household goods and services at WalMart stores.

23.     Personal credit card accounts are "open end credit" as defined in the WCA, Wis. Stat. § 421.301(27)(a) and are "consumer credit transactions." Wis. Stat. § 421.301(10)

24.     Exhibit A contains the following:

| Payment Information | |
| --- | --- |
| New Balance | $1,694.40 |
| Amount Past Due | $276.00 |
| Total Minimum Payment Due | $362.00 |
| Overlimit Amount | $84.40 |
| Payment Due Date | 11/17/2016 |

Exhibit A.

25.     Exhibit A also contains the following:

Account Number: ▮▮▮▮▮5278

| Total Minimum Payment Due | Amount Past Due | Payment Due Date | Overlimit Amount | New Balance |
| --- | --- | --- | --- | --- |
| $362.00 | $276.00 | 11/17/2016 | $84.40 | $1,694.40 |

Exhibit A.

26.     Exhibit A indicates that the "New Balance" on Plaintiff's WalMart MasterCard account ending in 5278 was $1,694.40, with an "Amount Past Due" of $276.00.

27.     Exhibit A also indicates with that Plaintiff's account had a "Payment Due Date" of November 17, 2016 and a "Total Minimum Payment Due" of $362.00.

4

28.     On or about December 8, 2016, EGS mailed a debt collection letter to Plaintiff regarding the alleged debt owed to "Synchrony Bank" regarding Plaintiff's "Walmart MasterCard Account" ending in 5278.  A copy of this letter is attached to this complaint as Exhibit B.

29.     The alleged debt referenced in Exhibits A and B was allegedly incurred for personal, family, or household purposes with an agreement to defer payment.

30.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

31.     Upon information and belief, Exhibit B is a form debt collection letter used by Defendant EGS to attempt to collect alleged debts.

32.     Exhibit B was the first letter that EGS sent to Plaintiff with respect to Plaintiff's alleged Synchrony Bank debt.

33.     Exhibit B contains the following:

███████4904
CREDITOR:
Synchrony Bank
ACCOUNT #: XXXXXXXXXXXXX5278
REGARDING:
Walmart® MasterCard® Account
TOTAL BALANCE: $1761.00

34.     Exhibit B also contains the following:

| Account # | Total Balance |
| --- | --- |
| XXXXXXXXXXXX5278 | $ 1761.00 |
| LORALIE A NOLET | |

35.     Exhibit B attempts to collect an account balance of $1,761.00.

36.     On or about December 25, 2016, Synchrony mailed an account statement to Plaintiff regarding an alleged debt, allegedly owed for Plaintiff's "WalMart MasterCard"

5

account. A copy of this account statement is attached to this complaint as Exhibit C. As December 25, 2016 was a Sunday and the post office was closed on December 26, 2016 for Christmas Day "observed," Exhibit C could not have been mailed until December 27, 2016.

37.     The alleged debt referenced in Exhibits A and B was allegedly incurred for personal, family, or household purposes with an agreement to defer payment.

38.     Exhibit C contains the following:

| Summary of Account Activity | |
|---|---|
| Previous Balance | $1,761.00 |
| + Fees Charged | $37.00 |
| + Interest Charges | $36.31 |
| New Balance | $1,834.31 |

Exhibit C.

39.     Exhibit C also contains the following:

| Payment Information | |
|---|---|
| New Balance | $1,834.31 |
| Amount Past Due | $447.00 |
| Total Minimum Payment Due | $539.00 |
| Overlimit Amount | $224.31 |
| Payment Due Date | 01/17/2017 |

Exhibit C.

40.     Exhibit C also contains the following:

Account Number: ██████████ 5278

| Total Minimum Payment Due | Amount Past Due | Payment Due Date | Overlimit Amount | New Balance |
|---|---|---|---|---|
| $539.00 | $447.00 | 01/17/2017 | $224.31 | $1,834.31 |

Exhibit C.

41.     Exhibit C indicates that, as of December 25, 2016, the "Previous Balance" on Plaintiff's WalMart MasterCard account ending in 5278 was $1,761.00, equal to the balance stated in Exhibit B.

6

42.     Exhibit C also indicates, that, as of December 25, 2016, the "New Balance" on Plaintiff's WalMart MasterCard account ending in 5278 was $1,834.31, with an "Amount Past Due" of $447.00.

43.     Exhibit C also indicates with that, as of December 25, 2016, Plaintiff's account had a "Payment Due Date" of January 17, 2017 and a "Total Minimum Payment Due" of $539.00.

44.     With Exhibit B, Defendant EGS attempted to collect $1,761.00, which was the entire balance of Plaintiff's account as of December 8, 2016 but Exhibit C, which Synchrony Bank mailed to Plaintiff after EGS sent Exhibit B, indicated that Plaintiff could still make a minimum payment of $539.00, substantially less than the balance EGS attempted to collect.

45.     Looking at Exhibits A, B, and C together, the unsophisticated consumer would be confused and misled as to the amount EGS was collecting: the minimum payment due or the entire balance of the account.

46.     On a credit card account, the amount "due" and the amount "owing" are different concepts. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at \*6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, "owing" an amount is distinguishable from the amount "due." For example, a debtor might "owe" a certain amount on a loan, but only a portion of that amount will be "due" at a particular time.").

47.     It is facially unclear from Exhibits A-C whether EGS and Synchrony are actually attempting to collect the whole balance of the Walmart account (the amount "owing") or just the minimum payment (the amount "due").

7

48. Moreover, Exhibit B attempt to collect the entire balance of the account indicates to the unsophisticated consumer that Synchrony has accelerated the debt and that the entire balance was now "due."

49. After default, a creditor may accelerate the maturity of a consumer credit transaction only after providing notice in writing of the consumer's statutory right to cure the default. Wis. Stat. § 425.105(1):

> A merchant may not accelerate the maturity of a consumer credit transaction, commence any action … and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104 if the customer has the right to cure under this section. (irrelevant exceptions omitted)

50. Between receiving Exhibits A-C, Plaintiff did not receive notice of right to cure default from Synchrony. As a result, Synchrony could not accelerate the Plaintiff's WalMart MasterCard account when it and EGS mailed Exhibits A-C to Plaintiff.

51. Looking at Exhibits A-C together, the unsophisticated consumer would be confused and misled as to whether Synchrony Bank had accelerated the balance of Plaintiff's WalMart MasterCard account sometime prior to December 25, 2016.

52. Exhibit B also misrepresents or confuses the actual amount of the debt that was "due" on December 8, 2016.

53. The unsophisticated consumer would be confused and misled as to the amount of the debt that EGS was collecting with Exhibit B.

54. Plaintiff was confused and misled as to whether Synchrony Bank had accelerated the balance of her WalMart MasterCard account sometime prior to December 25, 2016.

55. Upon information and belief, Synchrony Bank sent an additional account statement on or about November 25, 2016, which informed Plaintiff that it would not send her WalMart MasterCard account to a third-party debt collector for collection of the entire balance

unless she failed to make a minimum payment by a date certain on or around December 17, 2016.

56.     In spite of Synchrony Bank's assurance that it would not send Plaintiff's account to a third-party debt collector for collection of the entire balance as long as Plaintiff made a minimum payment by a date certain on or around December 17, 2016, EGS contacted Plaintiff about the alleged debt by mailing a letter on or about December 8, 2017.

57.     Plaintiff had to spend time and money investigating Exhibits A-C, and the consequences of any potential responses to Exhibits A-C.

58.     Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibits A-C.

## THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 ET SEQ.

59.     The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

60.     The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v.*

9

*Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

61.     Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

62.     Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

63.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information

10

concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

64.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

65.     15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

66.     15 U.S.C. § 1692e(2)(a) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

67.     15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

68.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

69.     15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

70.     15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

71.     15 U.S.C. § 1692g(a) states:
        a) **Notice of debt; contents**

            Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

            (1) the amount of the debt

            (2) the name of the creditor to whom the debt is owed;

            (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

            (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

12

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

## THE WISCONSIN CONSUMER ACT, CH. 421-427 WIS. STATS.

72.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

73.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

74.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

75.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives."  *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

76.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

13

77.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

78.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

79.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

80.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

81.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

82.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

14

83.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

84.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

85.     Plaintiff brings this count against Defendant EGS.

86.     EGS' letter is misleading and confusing to the unsophisticated consumer in that EGS' letter contradicts the creditor's account statements.

87.     Exhibit B was sent before the "Payment Due Date" stated in Exhibit C and the balance Exhibit B attempted to collect was greater than the "Minimum Payment Due" that was stated in Exhibit C.

88.     Exhibit B stated that it was collecting the "total balance" of $1,761.00.

89.     In fact, only the minimum payment due, between $362.00 and $539.00, was actually due.

90.     Synchrony had not sent Plaintiff notice of her right to cure default before sending Exhibit B. Thus, Synchrony could not accelerate the debt and the entire balance was not due.

91.     Defendant misrepresented the amount of the debt, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

92.     Defendant's letter is confusing and misleading to the unsophisticated consumer, in violation of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

## COUNT II – WCA

93.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

15

94.     Count II is brought against both Defendants.

95.     Exhibit B was sent before the "Payment Due Date" stated in Exhibit C and attempted to collect a balance that was greater than the "Minimum Payment Due" stated in Exhibit C.

96.     Exhibit B contradicts Exhibits A and C and attempts to collect portions of the debts that were not yet due.

97.     EGS violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(j), and 427.104(1)(L). Synchrony is liable, directly or vicariously, for its debt collectors' WCA violations.

## COUNT III – WCA

98.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

99.     Count III is brought against Defendant Synchrony.

100.    Exhibit C, sent by Synchrony, contradicts Exhibit B, sent by EGS on Synchrony's behalf.

101.    Although Synchrony informed Plaintiff that she need only pay the "Minimum Payment Due" by the "Payment Due Date," Synchrony engaged a third-party debt collector to collect the entire balance of Plaintiffs' accounts before the "Payment Due Date."

102.    Synchrony allowed a collection agency collecting on Synchrony's behalf to misrepresent the amount that was actually "due" at the time EGS sent Exhibit B to Plaintiff.

103.    Synchrony violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(j), and 427.104(1)(L).

16

## COUNT IV -- WCA

104.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

105.    Count IV is brought against both Defendants.

106.    Synchrony allowed a collection agency collecting on Synchrony's behalf to misrepresent the amount that was actually "due" at the time EGS sent Exhibit B to Plaintiff.

107.    Synchrony had not sent Plaintiff notice of her right to cure default before authorizing EGS to send Exhibit B. Thus, Synchrony could not accelerate the debt, the entire balance was not due, and the representation that the entire balance was due was false.

108.    Synchrony violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

109.    Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent collection letters and account statements in the form represented by Exhibits A-C to the complaint in this action, (c) attempting to collect a debt owed to Synchrony, (d) between October 26, 2016 and October 26, 2017, inclusive, (g) that was not returned by the postal service.

110.    The Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of each Class.

111.    There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA and WCA.

17

112. Plaintiff's claims are typical of the claims of the members of the Class. All are based on the same factual and legal theories.

113. Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

114. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

115. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: October 26, 2017

**ADEMI & O'REILLY, LLP**

By: s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)

18

jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

19

Case 2:17-cv-01476-PP    Filed 10/26/17    Page 19 of 19    Document 1